I will now hear argument in the Khamo. Good morning, Your Honors. May it please the Court. Would you hold on just one second so that Ms. Smith can get organized? Okay. Thank you. May it please the Court. Your Honors, I believe this case should be cited solely on the legal status which Petitioner held in Mexico, which was none. He was an illegal alien in Mexico, and it should not be determined that he was formally resettled there, except for a brief period before he left Mexico for the United States. Petitioner did not obtain any lawful status there. Counsel, is that a requirement of firm resettlement in prior cases, or are you asking for a new rule? In other words, he lived there for about 10 years, he married, he had kids in Mexico, he ran a business in Mexico. That sounds in ordinary parlance a lot like he was firmly resettled there, so. It's not an administrative requirement or regulatory requirement. However, it does appear that there's a common thread that runs throughout the circuit's cases that, well, for example, Your Honors, the cases decided by this Court since briefing all have this one element of some legal status which was held by the court. We pretty plainly stated, whether correctly or incorrectly, that the pacing item is the length of residence. And if the length of residence is the length of undisturbed residence in the third country, is, in the case of Powell, three years, that is a rebuttable presumption. That's correct, Your Honor. And I think it can be rebutted in this case where Petitioner has no legal right to return to Mexico. Well, that's his problem. I mean, that's because he came here with time left. He didn't have to come here. So we've already said in Vang that that's not a relevant consideration, the fact that he can no longer go back. At the time he came to this country, he had time left on his visa. But it seems to me you've got a case where he was there for ten years, he was employed, he got married, he had two kids, he ran his own business, he had an uncle there, his family there. He was well settled in, wasn't he? Yes, he was, Your Honor. But he was also threatened with deportation when his marriage fell apart and his wife refused to immigrate him. Well, you know, she kicked him out of the house, but that doesn't mean that Mexico is kicking him out of the country. She threatened to deport him to the Mexican immigration, and Barbara Strickland, the legal advisor to the Mexican consulate, testified that she knew of no instance where an individual such as Petitioner was able to apply for and obtain asylum in Mexico. If he had been reported, he would have been detained and deported to Iraq. Without the ability to self-petition or to obtain any legal status, he was solely at the mercy, essentially, of his wife, who it appears at the time that he left Mexico was intent on having him deported. It was his testimony that he was afraid that he would be sent back to Iraq too sweet. He left that country, he left Mexico, he left Iraq, because he was afraid of what was going to happen to him. And the record is clear, it's uncontroverted that the torture which he suffered on account of political opinion and or religion was beyond our capability to really comprehend. Though he did have a long residence there, Your Honor, that really isn't the only circumstance that should be taken into account. And I do believe, and I offer to the court, that the deciding factor should be that he couldn't remain in Mexico. He had to leave. He was not able to obtain permission to remain there legally, and if he remained there illegally, it would be likely that he would have been arrested and deported. What is your best case for the proposition that the deciding factor is that he couldn't remain in Mexico rather than his length of residence? If I may, Your Honor. I think that would be a scene, Your Honor, a scene in Chisholm Carr v. INS, where this court stated that administrative record does not indicate that, seeing applied for, received, or anticipated any type of permanent residence status, citizenship, or some other type of permanent resettlement. Thank you. Thank you, Your Honor. Ms. Smith. Good morning, Your Honor. Again, Your Honors. Patricia Smith for Respondent. In this case, the Court should dismiss the petition for review and affirm the Board of Immigration Appeals' decision that the record does not compel the finding that the petitioner had not formally resettled in Mexico prior to his arrival. Pursuant to ACFR Section 208.13, an immigration judge shall not grant asylum to any applicant who has been formally resettled, within the meaning of ACFR Section 208.15. Section 208.15 provides that an alien is considered to be permanently resettled if, prior to arrival into the United States, he or she entered into another nation with, or while in the nation received, an offer of permanent residence status, citizenship, or some other type of permanent resettlement. As the Court just indicated in the Cho decision, the Court determined that a three-year period of duration in the country was enough to determine that there was a rebuttable presumption that the alien in that case could stay. The general proposition the Court stated was, where the duration and circumstances indicate that the asylum seeker may remain in the third country, then it is incumbent upon him to show the contrary. So you're relying on, obviously, on the other clause of the regulation, right? That he was not granted lawful permanent residence status, and he did not become a citizen. So it's the other form of resettlement that we're looking at here, right? Correct, Your Honor. And we've cited numerous decisions in our brief at pages 24 and 25, where we discuss various times where the Court, this Court and other courts, have held there was firm resettlement, and they haven't necessarily specified which provision they're looking at. But, you know, presumptively, exactly, they're looking at that provision and determining, yes, there was permanent residency here. Counsel, in 808.15, they define firm resettlement. Yes, Your Honor. They say an alien is considered to be firmly resettled if, prior to arrival in the United States, he entered into another nation with or while in that nation received an offer of permanent residence status, citizenship, or some other type of permanent resettlement. Yes, Your Honor. Now, none of these happened to this fellow. According to the law and the circuit, they did. I mean, in the Cho decision, it was a three-year duration of residency. And the Court has said that a undisturbed, lengthy period of time in another country is sufficient to establish firm resettlement. There does not have to be some legal, as Petitioner would like to say, status that's been formed. It can be presumed, and then it's the Petitioner's responsibility to rebut that presumption. Then we had an expert here who said this fellow never could get any type of permanent status, and he wouldn't be allowed to come back to Mexico. Is that right? How does that cut against these other cases? It's not exactly correct, Your Honor. In terms of what the legal advisor for the Mexican consulate had indicated, she had indicated that individuals like Petitioner had, in fact, received asylum in Mexico in the past. She didn't – there wasn't necessarily a process in place. But in terms of people that had received asylum, people of the Petitioner's what he was claiming was his – basically his persecution, in fact, had received asylum. She indicated that she didn't think at this point he would be able to get back into the country. But under the Vang decision, what's important is were you firmly resettled prior to your arrival into the United States. And under the Cho decision, in this case, he was. And the issue of whether he could go back at this point is irrelevant. And he did – when he came to the United States, initially he could have gone back. He had a visa, he had a working visa, and that would have permitted him reentry back into Mexico. But this Court has held that the lapse of time cannot be used to say that you were not firmly resettled. The whole purpose of asylum in the first place has been that you want to protect people from persecution when they're in flight from that country. And firm resettlement has been used to say, in this case, they're not in flight from persecution. They live somewhere else, and it appears they've got a residency there. So there's no basis for us to give them asylum in this country. They can't decide, use this as a bootstrapping thing, leave one country, then come here and say, oh, you know, we need asylum now. He was in Mexico for 10 years. He got married. He had children. Yes, I understand all that. Now, had he waited out his visa period in Mexico and they'd refused to renew, would he be in a better position than he is where he had, I don't know how many months more on that visa? I – that's a little difficult to answer. I don't know. I mean, there's no reason to believe that his visa would not have been renewed. It was renewable. Well, the expert said five times, and he'd have that. Well, as of 1992, he came to the United States in 1992. Prior to that time, they could be renewed indefinitely. As of 1992, it became a one-year period, and then it could be renewed for five years. Now, it would be pure speculation for us to guess what could have happened in those five years, whether, you know, he and his wife would have made up and he would have gotten residency through him. I mean, what we have to look at is what the regulations say, and they say, you know, prior to your entry, what was the circumstances? And in his case, you know, he was there for 10 years, far longer than in the show case and far longer than some of the other cases that we've cited in the brief. Now, when we deport him, if he says the country should be Mexico and they won't take him back, what then? Do we send him to Iraq, where he's been tortured? Because we don't know what's happening in Iraq now, but that's a whole other issue. There's a couple of points, Your Honor. First, the deportation order indicates that he would be deported to Iraq. However, at the current time, the United States is not deporting people to Iraq. That's within the discretion of the Department of Homeland Security. So at this point, he would not be deported to Iraq, and I don't know at what point that would happen. So does that mean he would remain here? Right, exactly. It would be for the Department of Homeland Security to decide what to do in terms of executing the order, you know, whether there could be another country that they could send him to instead. But the deportation order read Iraq, and we're not currently sending people there. I'm sorry, Your Honor. Are we sending them somewhere else, or are we detaining them? I mean, what are we doing with someone who is otherwise deportable to Iraq? I know this isn't in the record. It's just as far as you brought it up, I'm curious. And I can't profess to know all the specifics. But with respect to this petition, I mean, he's not someone who's currently being retained, as far as I know, and there would be no basis to suddenly retain him. So that wouldn't be happening. It's a different situation, and there's different law that applies in terms of when someone's in retention and how long you can hold them. But that's not the case here. Was there a second point that I missed, Your Honor? No, I was just wondering whether an attempt would be made to deport him to Mexico, but apparently not. Again, that would be something that would be within the discretion, you know, of the Department of Homeland Security, and I don't know what they would do at that point. But, you know, it would be something before the Court. And the old issue of withholding of deportation is not before this Court because the petitioner didn't appeal that to the BIA and raise that here. But the immigration judge did find that there was a basis to withhold deportation because he found the petitioner would not have a well-founded fear of persecution based on the higher standing that's withholding deportation. So, you know, they didn't believe even based on what the petitioner said that he would face persecution. Well, they did it on the basis that so long a time had passed, I think. But conditions changed again and the war intervened, so I don't think we paid much attention to what was said about that. That government is gone. Conditions have certainly changed. You know, and whether or not the only way that if this Court would decide he wasn't firmly resettled, they would need to remand. And then at that point, they would need to make a determination of asylum because that wasn't made in the first place. And at that point, you know, as to exactly what they would look at, you know, it can be debatable, I guess. But, you know, I don't think that issue is necessary before the Court. Summing up your order, based significantly and primarily on the decisions of Cho and Vang in this case, petitioner has not established a case that compels a finding that he had not firmly resettled to Mexico prior to his arrival. For that reason, the Court should affirm the Board's decision and deny the petitioner's review. Okay. Thank you. Mr. Smith, your seat. Your Honor, Your Honors, Ms. Strickland stated in her testimony that Mr. Colombo's ability to attain a more profound cooperation from his wife and the ability to prove that he maintained a conjugal domicile with her and his children when he left Mexico, before leaving Mexico and coming to the United States. They were no longer living together. He would be unable to prove that he maintained a conjugal domicile. He was unable to attain her cooperation. And that is expressly why he left Mexico, because at that point he could no longer remain. If I may touch on a bit of the interchange between yourselves and the government's attorney, typically what happens in a matter where a person cannot be retained to their home country, for example, could be Somalia, could be Vietnam. The person is already deported. The government will put them on an order of supervision, which is like being on probation. They have to report, perhaps usually it's monthly, it could be every two or three months, to the deportation officer if country conditions have changed, or not country conditions, but conditions have changed, so that the country of the person's citizenship can be deported, such as in Cambodia, where for years persons could not be deported to Cambodia, but there is now an agreement between Cambodia and the United States. Then the person, upon reporting some month, will be taken into custody and deported. In the meantime, are they entitled to something equivalent to a green card so they can work? Well, the green card specifically refers to the alien identification card for a legal permanent resident. The person would have an open card. All I want to know is can they work, and they can, under a different car. That I'll submit, Your Honor, if there is no other questions. Okay. Thank you very much, both of you, for your argument. The matter just argued will be submitted. Thank you.
judges: B. Fletcher, Rymer, Graber